[Cite as *Fifth Third Mtge. Co. v. Perry*, 2016-Ohio-5679.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| FIFTH THIRD MORTGAGE COMPANY, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 15CA22 |
| v. | : | |
| | | <u>DECISION AND</u> |
| KENNETH L. PERRY, ET AL., | : | <u>JUDGMENT ENTRY</u> |
| Defendants-Appellants. | : | RELEASED 08/30/2016 |

<u>APPEARANCES:</u>

James P. Connors, Law Offices of James P. Connors, Columbus, Ohio, for appellant Kenneth L. Perry.

Stacy A. Cole, Harry W. Cappel, and John C. Greiner, Graydon Head & Ritchey LLP, Cincinnati, Ohio, for appellees Fifth Third Mortgage Company and Fifth Third Bank.

PER CURIAM.

{¶ 1} Kenneth L. Perry ("Perry") appeals, for the second time, a decision and judgment entry of the Pickaway County Common Pleas Court, which granted summary judgment in favor of Fifth Third Mortgage Company ("Fifth Third Mortgage") on its foreclosure complaint; and in favor of Fifth Third Mortgage and Fifth Third Bank on Perry's remaining counterclaims/new-party claims.

{¶ 2} This case was previously before this Court in 2013 after the trial court granted summary judgment in favor of Fifth Third Mortgage on its foreclosure complaint and in favor of Fifth Third Mortgage and Fifth Third Bank on Perry's counterclaims/new-party claims. *See Fifth Third Mortgage Co. v. Perry*, 4th Dist. Pickaway No. 12CA13, 2013-Ohio-3308 ("*Perry I*"). In

*Perry I*, this Court affirmed the judgment in part, reversed the judgment in part, and remanded the case to the trial court. *Id*. at ¶ 75. Specifically, we concluded that summary judgment in favor of Fifth Third Mortgage on its foreclosure complaint was improper because an issue of fact remained as to whether the parties had entered into an oral agreement modifying the terms, timing, and mode of payment. *Id*. at ¶¶ 34-36. We also ruled that issues of fact precluded summary judgment in favor of Fifth Third Mortgage and Fifth Third Bank on Perry's breach of contract and negligent misrepresentation counterclaims/new-party claims. *Id*. at ¶ 73. However, we did affirm the trial court's award of summary judgment in favor of Fifth Third Mortgage and Fifth Third Bank on all of Perry's other counterclaims/new-party claims. *Id*.

{¶ 3} On remand, the trial court has once again granted summary judgment in favor of Fifth Third Mortgage and Fifth Third Bank. Faced with a second Motion for Summary Judgment, the trial court has concluded that Fifth Third Mortgage and Fifth Third Bank are entitled to judgment as a matter of law based on the Ohio Supreme Court's 2014 decision in *FirstMerit Bank N.A. v. Inks*, 138 Ohio St.3d 384, 2014-Ohio-789, 7 N.E.3d 1150.

{¶ 4} In the case sub judice, Perry contends that the trial court once again erred by granting Fifth Third Mortgage and Fifth Third Bank summary judgment on all claims, defenses, and issues. Specifically, he contends that the trial court erred by failing to apply the law of the case doctrine; and that this case should be remanded to the trial court for further proceedings. We disagree. Intervening decisions from the Ohio Supreme Court provide an exception to the law of the case doctrine, and we conclude that *Inks* is an intervening decision that controls this case. Accordingly, we affirm the decision and judgment entry of the trial court.

## I. Facts and Procedural Posture

{¶ 5} On July 15, 2004, Richard A. Perry and Audrey M. Perry, Perry's parents, executed a promissory note in favor of The Equitable Mortgage Corporation in the principal amount of $77,650.00. The note was secured by a mortgage on the property located at 9438 U.S. Route 62 in Orient, OH (the "property"). Eventually the note and mortgage were assigned to Fifth Third Mortgage.

{¶ 6} On June 4, 2005, Audrey M. Perry died and her interest in the property was transferred to Richard A. Perry by Warranty Deed dated July 27, 1988. In February 2008, Richard Perry entered into a Loan Modification Agreement (the "loan modification") with Fifth Third Mortgage, which increased the principal balance on the promissory note to $86,882.96.

{¶ 7} On October 9, 2009, Richard Perry passed away. A short time later appellant Perry took title to the property by a transfer on death deed. Both parties agree that while Perry is the current titleholder of the property, he never assumed the note, loan modification, or mortgage by any written agreement. According to the record, no probate estate was opened following Richard Perry's death.

{¶ 8} From here, the parties' portrayal of the facts varies significantly.

{¶ 9} According to Perry, following his father's death he continued to make payments on the debt, but eventually fell behind on the obligations. Once the debt became delinquent, Perry contends that Fifth Third began to threaten legal action.

{¶ 10} In late June 2010, Perry says that Fifth Third contacted him regarding a residential loan assistance program that was being offered from a branch office in Grove City, Ohio. Perry purportedly accepted the invitation, and in July 2010 he allegedly met with a Fifth Third loan

officer.[1] At the meeting, Perry contends that he reached an oral agreement with Fifth Third, under which Fifth Third would withhold from foreclosing the mortgage conveyed by his father, if he would pay a lump sum of $5,000.00 and agree to a modified payment plan on his father's debt.[2]

{¶ 11} According to Perry, he paid the $5,000.00 at the July 2010 meeting and was told by Kathy/Roberts that an accounting and new loan payment coupon book would be sent to him in several months; and that once he received the coupon payment book he should resume payments. Perry was allegedly told that the delay in time was due to the popularity of the program.

{¶ 12} Perry claims that the new loan payment book arrived in November 2010. Perry made his first payment of $1,114.72 pursuant to the new coupon book on November 18, 2010, well in advance of the December 1 due date. Unbeknownst to Perry, however, Fifth Third Mortgage had filed its foreclosure complaint two days earlier, on November 16, 2010. Fifth Third returned the November 18 payment to Perry. Perry attempted to make a second payment that was due on January 1, 2011, but Fifth Third again refused payment.

{¶ 13} Perry contends that he never received an accounting and never received any notices, warnings, or other written materials between the July 2010 meeting and receipt of the payment coupon book in November 2010.

{¶ 14} The Fifth Third entities convey a significantly different version of the events.

---

[1] In *Perry I*, this loan officer was referred to as "Kathy". However, further discovery has revealed this individual to be "Nora Roberts".

[2] Under the new payment plan purportedly reached by the parties, Perry claims that the exact monthly amount due was undetermined, but that it was to increase significantly from the $830.00 per month that was currently due.

{¶ 15} The Fifth Third entities, appellees in the instant case, claim that following the death of his father, Perry held himself out as the executor of the Richard Perry estate. The Fifth Third entities claim that after the loan payments fell behind, Perry contacted them about catching up on the debt. According to them, on or about June 10, 2010, Perry discussed the loan with Fifth Third Mortgage and agreed to pay $5,000.00 by June 30, 2010, and an additional $4,143.92 in July 2010 to bring the account current. It appears that in exchange for the payments, Fifth Third agreed to send a forbearance proposal. To that end, the Fifth Third entities contend that they sent a proposed forbearance agreement on June 14, 2010, addressed to the Estate of Richard A. Perry, permitting a single monthly payment to be skipped. The forbearance proposal was never signed or returned. The Fifth Third entities deny that any other forbearance proposals were discussed, and deny ever entering any agreement or making any representation, in writing or otherwise, to modify the loan.

{¶ 16} The Fifth Third entities agree that a payment of $5,000.00 posted to the loan account on July 15, 2010, but contend that the payment covered the existing loan payments and fees through June 2010. Fifth Third also agrees that the next payment received from appellant was on November 18, 2010, after Fifth Third Mortgage had instituted the foreclosure action. The Fifth Third entities also agree that it returned the November payment. They allege, however, that they sent numerous letters of default to the Richard Perry Estate beginning in August of 2010; to the same address that the coupon book was sent.

{¶ 17} On November 16, 2010, Fifth Third Mortgage filed its Complaint in Foreclosure with the Pickaway County Common Pleas Court. Named as defendants were Kenneth L. Perry; Jane Doe, Unknown Spouse of Kenneth L. Perry; and Kemba Columbus Credit Union.

Ultimately Fifth Third Mortgage sought, and the trial court granted, an order adding the Pickaway County Treasurer as a party defendant.

{¶ 18} On March 21, 2011, Perry filed an Answer, Counterclaims, and New Party Claims. Perry brought counterclaims and new-party claims against Fifth Third Mortgage and new-party defendant Fifth Third Bank for breach of contract, conversion, civil conspiracy, abuse of process, fraud, negligent misrepresentation, and violations of the Ohio Consumer Sales Practices Act.

{¶ 19} After responding to the counterclaims and new-party claims, on August 19, 2011, the Fifth Third entities filed their first Motion for Summary Judgment seeking judgment on Fifth Third Mortgage's foreclosure claim and on Perry's counterclaims and new-party claims. Perry filed his Memorandum Contra, along with his own Cross Motion for Summary Judgment on September 21, 2011. In his Cross Motion for Summary Judgment, Perry sought judgment on his counterclaims and new-party claims, as well as the foreclosure claim asserted by Fifth Third Mortgage. Both motions were fully briefed by October 17, 2011.

{¶ 20} The trial court granted the Fifth Third entities' first Motion for Summary Judgment and denied Perry's Cross Motion for Summary Judgment by an order dated January 3, 2012. The Summary Judgment Order specifically found that Fifth Third Mortgage was entitled to summary judgment on its foreclosure claim and that the Fifth Third entities were entitled to summary judgment on Perry's counterclaims and new-party claims. The Summary Judgment Order further directed counsel for Fifth Third Mortgage to submit a foreclosure decree, to be entered by separate order.

{¶ 21} Ultimately, the first Entry Granting Summary Judgment and Decree in Foreclosure was entered on May 17, 2012, and Perry filed a timely notice of appeal (i.e. *Perry I*).

{¶ 22} In *Perry I*, we affirmed the trial court's judgment in part, reversed the judgment in part, and remanded the case for further proceedings. *See Perry I* at ¶ 75. Ultimately we determined, inter alia, that Fifth Third Mortgage was not entitled to summary judgment on its foreclosure complaint because an issue of fact existed as to whether the parties had reached an oral agreement modifying the terms, timing, and mode of payment. *Id*. at ¶ 36. Specifically, we noted that: "Whether the agreement is characterized as a modification agreement, forbearance agreement, assumption of mortgage, or otherwise; if any such agreement exists, as asserted by [Perry], than the mortgage would not have been in default and Fifth Third would not have been entitled to foreclose on the property." *Id*. In reaching this conclusion, we also rejected the Fifth Third entities' argument that if any oral agreement existed, it violated the Statute of Frauds, noting as follows:

> While [the Fifth Third entities] deny ever reaching an agreement with [Perry], they assert that even if one exists it fails to comply with the Statute of Frauds, and thus is invalid as a matter of law. Under the Statute of Frauds, an agreement concerning an interest in real property is unenforceable unless it is reflected in a signed writing containing all the essential terms of the agreement and signed by the party to be charged. R.C. 1335.04 and 1335.05. Oral agreements which extend the time of payment due under a mortgage debt are not barred by the Statute of Frauds, however, since such an agreement does not take away or confer any interest in land, but merely determines when the installments of the mortgage indebtedness become due. *See Nonamaker v. Amos*, 73 Ohio St.

163, 172, 76 N.E. 949 (1905); *Negley v. Jeffers*, 28 Ohio St. 90, 100 (1875); *Jones v. Seven Hills Farm, Inc.*, 4th Dist. No. 1977, 1991 WL 224159, \*4 (Oct. 30, 1991.); *Midfirst Bank v. Biller*, 3rd Dist. No. 13-10-13, 2010-Ohio-6067, ¶ 21, fn. 4. This is consistent with the general rule that oral agreements respecting the payment schedule for an executed conveyance of land are unaffected by the Statute of Frauds. *Jones* at \*4; *Pettett v. Cooper*, 62 Ohio App. 377, 383, 24 N.E.2d 299 (1st Dist.1939).

Moreover, an oral assumption of a mortgage is not within the Statute of Frauds. *See Cleveland Trust Co. v. Elbrecht*, 137 Ohio St. 358, 361-362, 30 N.E.2d 433 (1940). "[S]uch a contractual obligation is not within the statute of frauds for the promise to pay the mortgage does not concern an interest in land nor constitute an agreement to answer for the debt, default or miscarriage of another." *Id*. at 362, 30 N.E.2d 433.

In this case, the agreement, if one was in fact made between the parties, does not affect an interest in land. It merely structured new payment amounts and deadlines so that [Perry] could avoid foreclosure. As such, the alleged agreement was not required to be reduced to writing, and is not barred by the Statute of Frauds.

*Id*. at ¶¶ 39-41. Finally, in *Perry I*, we also determined that Perry's counterclaims/new-party claims for breach of contract and negligent misrepresentation should not have been disposed via summary judgment because issues of fact remained regarding whether the parties had entered into a contract or discussed new payment terms. *Id*. at ¶¶ 50-51, 59. However, we did affirm the

trial court's grant of summary judgment in favor of the Fifth Third entities on Perry's remaining counterclaims/new-party claims. *Id*. at ¶¶ 52-58, 60-67, 73.

{¶ 23} The Fifth Third entities filed a Motion for Reconsideration of our decision in *Perry I*. Through the Motion for Reconsideration, the Fifth Third entities argued that we improperly interpreted, construed, and applied Ohio law; and again asserted that the Statute of Frauds barred any purported oral agreement of the parties and that they were entitled to judgment as a matter of law. This Court denied the Motion for Reconsideration by Entry filed on September 17, 2013. In that Entry we concluded that in addition to the reasons stated in the *Perry I* decision and judgment entry, the Statute of Frauds arguably did not apply because there existed evidence that the Fifth Third entities had "engaged in subsequent conduct acknowledging the alleged modification or its mutual assent to the modification".

{¶ 24} On remand, the Fifth Third entities filed a second Motion for Summary Judgment on May 20, 2014. Among other things, the Fifth Third entities claimed that Perry's primary defense and remaining counterclaims/new-party claims – based on the existence of an oral agreement modifying the terms, timing, and mode of payment – were barred as a matter of law by the Statute of Frauds according to the Ohio Supreme Court's decision in *Inks*, *supra*, which had been decided on March 4, 2014. The Fifth Third entities also argued, in the alternative, that if the parties were permitted to contract orally, the contract lacked in essential terms and was not enforceable. Perry filed a Memorandum Contra the Second Motion for Summary Judgment on June 5, 2014; and the Fifth Third entities filed a Reply Memorandum in support of the motion on June 12, 2014. The trial court filed a Decision granting the motion on June 17, 2015. The Decision states, inter alia, that the *Inks* decision "controls the case sub judice" and is an "intervening, precedent setting decision, overturning the decision of [*Perry I*]". (Emphasis sic.)

{¶ 25} Perry filed a Motion for Reconsideration of the June 17 Decision. However, on July 9, 2015, the trial court issued its Entry Granting Summary Judgment and Decree in Foreclosure in favor of the Fifth Third entities on all claims, defenses, and issues. The Entry also included a single sentence denial of Perry's Motion for Reconsideration. Perry then filed a timely Notice of Appeal indicating his intent to appeal from the June 17 Decision and July 19 Entry.

## II. Assignments of Error

{¶ 26} On appeal, Perry raises the following assignments of error for review:

First Assignment of Error:

> The trial court erred by granting summary judgment for a second time on remand to Fifth Third Mortgage Company and Fifth Third Bank in an Entry Granting Summary Judgment and Decree in Foreclosure filed on July 9, 2015.

Second Assignment of Error:

> The trial court erred by denying appellant Kenneth Perry's motion for reconsideration by its Entry Granting Summary Judgment and Decree in Foreclosure filed on July 9, 2015.

Third Assignment of Error:

> The trial court erred by granting summary judgment to Fifth Third Mortgage Company and Fifth Third Bank in a Decision filed on June 17, 2015.

Fourth Assignment of Error:

> The trial court erred by failing and refusing to follow this court's mandate on remand from its decision in *Fifth Third Mortgage Co. v. Perry*, 2013-Ohio-3308.

## III. Law and Analysis

{¶ 27} The issues raised by all of Perry's assignments of error are so interrelated that this Court chooses to address them together. Through these assignments of error, Perry contends that the trial court erred when it granted summary judgment in favor of Fifth Third Mortgage on its

foreclosure action; and in favor of Fifth Third Mortgage and Fifth Third Bank on his remaining counterclaims and new-party claims for breach of contract and negligent misrepresentation.

**A. Summary Judgment Standard of Review**

{¶ 28} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 29} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R.

56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

### B. The Law of the Case Doctrine

{¶ 30} Perry contends that this Court's decision in *Perry I* and our subsequent denial of the application for reconsideration constitutes the law of the case; and thus, the trial court erred by granting summary judgment on remand and by deciding legal issues which had been previously determined. Specifically, Perry contends that our previous decisions unequivocally held that the Statute of Frauds did not operate to bar his defense and claims of a purported oral agreement between the parties concerning the payment amounts and deadlines. Thus, Perry argues that the trial court acted beyond its authority by re-considering the Statute of Frauds issue in the second Motion for Summary Judgment.

{¶ 31} In *Nolan v. Nolan,* 11 Ohio St.3d 1, 462 N.E.2d 410 (1984), the Ohio Supreme Court discussed the law of the case doctrine in relation to a trial court's failure to execute a remand mandate given by a reviewing court. Specifically, *Nolan* involved a trial court's complete restructuring of a real estate settlement on remand, rather than limiting its action on remand to making findings regarding the right of occupancy of the marital home, as instructed by the reviewing court. *Nolan* at 2. In response, the Ohio Supreme Court held that "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior

court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at syllabus. In reaching its decision, the *Nolan* court discussed the law of the case doctrine as follows: "* * * [T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Id.* at 3. The *Nolan* court further noted that while the rule will not be applied to achieve unjust results, the application of the rule is necessary "to ensure consistency of results in a case" as well as "to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.;* citing *Gohman v. St. Bernard,* 111 Ohio St. 726, 730–731, 146 N.E. 291 (1924) (reversed on other grounds), and *State ex rel. Potain v. Mathews,* 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979).

### C. *Inks* is an Intervening Decision that Creates an Exception to the Law of the Case Doctrine

{¶ 32} The Fifth Third entities claim that the law of the case doctrine does not apply in this instance because *Inks* is dispositive of the Statute of Frauds issue and was decided by the Ohio Supreme Court on March 4, 2014, after this Court had issued our decision in *Perry I*. Thus, the Fifth Third entities contend that *Inks* is an "intervening decision" by a superior court, justifying the trial court's decision to disregard our prior holdings in *Perry I*. *See Nolan* at syllabus (implying that "extraordinary circumstances, such as an intervening decision by the Supreme Court", provide an inferior court with discretion to disregard the mandate of a superior court in a prior appeal in the same case). For the reasons that follow, we conclude that *Inks* does relate to the case sub judice, and thus does constitute an "intervening decision" justifying the trial court's departure from our holdings in *Perry I*.

{¶ 33} In *FirstMerit Bank, N.A. v. Inks*, *supra*, the Ohio Supreme Court was presented with the following question: "Whether Section 1335.05 of the Ohio Revised Code prohibits a party from raising as a defense that the parties to a contract involving an interest in land orally agreed to modify the terms of their agreement." *Inks* at ¶ 1. Ultimately, the Ohio Supreme Court ruled "a party cannot assert an oral agreement pertaining to an interest in land in an effort to defeat a judgment entered pursuant to a written contract." *Id*. at ¶ 3.

{¶ 34} In *Inks*, a bank had obtained a foreclosure judgment. *Id*. at ¶ 5. Before the foreclosure auction, the judgment debtor and the bank entered into a written agreement providing for the judgment debtor making a $200,000 deposit and various payments by specified dates, which would ultimately result in a release of the mortgage. *Id*. at ¶ 7. Two days before the scheduled auction, the judgment debtor orally told a bank employee that he could only raise $150,000. The judgment debtor alleged that the bank employee stated that $150,000 was "doable". *Id*. at ¶ 8. Nonetheless, the bank proceeded with the auction and obtained a deficiency judgment. The judgment debtor moved to set aside the judgment contending the oral agreement precluded the bank's auction. *Id*. at ¶¶ 9-11.

{¶ 35} In response to the bank's contention that the Statute of Frauds invalidated the oral agreement, the judgment debtor argued that the contract did not pertain to an interest in land. The Ohio Supreme Court rejected the judgment debtor's argument, however, noting first that a mortgage is a "conveyance of property that passes the property conditionally to the mortgagee as well as a transfer of property as security for the debt." *Id*. at ¶ 23. The Court further noted that an "alleged oral agreement [which] * * * involves the terms upon which [the bank] allegedly agreed to release the mortgage" pertains to an interest in land. *Id*. at ¶ 25.

{¶ 36} The facts here are very similar to *Inks*. The alleged oral modification in the present matter involves the terms upon which the Fifth Third entities allegedly agreed to modify the terms, timing, and mode of payment due under the mortgage. Accordingly, and pursuant to *Inks*, the Statue of Frauds renders the oral modification to the mortgage unenforceable; and summary judgment in favor of the Fifth Third entities was appropriate.

{¶ 37} The Ohio Supreme Court had not yet decided *Inks* when we issued our opinion in *Perry I* and our decision denying the Fifth Third entities' application for reconsideration. In short, *Inks* is an intervening Supreme Court decision that justified the trial court's departure from this Court's directives on remand. Thus, the law of the case doctrine does not apply here. Perry's first, second, third, and fourth assignments of error are overruled.

## IV. Conclusion

{¶ 38} Having overruled all of Perry's assignments of error, we hereby affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

HOOVER, J.: Dissents with Dissenting Opinion.

{¶ 39} I respectfully dissent from the per curiam opinion. I believe that *Inks* is factually distinguishable from the case sub judice in several key aspects, and thus, its legal ruling does not apply to this case. Rather, I would conclude that (1) *Inks* is not an intervening Supreme Court decision; (2) the law of the case doctrine applies; and (3) the Fifth Third entities are not entitled to summary judgment. Accordingly, I would sustain Perry's assignments of error as they relate to the summary judgment award and reverse the judgment of the trial court.

{¶ 40} First, *Inks* involved matters that took place after the bank had already obtained a foreclosure judgment. Here, the foreclosure decree was not obtained prior to the alleged oral agreement of the parties. Next, the judgment debtor in *Inks* was a party to the written note and mortgage and to the written agreement to release the mortgage. On the other hand, in this case, Perry was not a party to the note or mortgage, or to any other written agreement with the Fifth Third entities. Rather, it was Perry's parents who had executed the note, mortgage, and loan modification at issue. Any alleged oral agreement reached by Perry and Fifth Third was thus a new agreement, and not a modification to an existing written agreement between the parties. Finally, and most importantly, the alleged oral agreement at issue in this case did not involve an agreement to release or terminate the mortgage, as in *Inks*. Rather, the alleged oral agreement between Perry and Fifth Third would only affect the timing and amounts of payments due under the note and mortgage. It is not an agreement to release or discharge the property from the effect of the mortgage. As such, and in accordance with the cases cited by this Court in *Perry I*, I would conclude that the alleged oral agreement does not concern an interest in land and is not subject to the Statute of Frauds. In other words, I would conclude that *Inks* does not control the outcome of this case, and is not an intervening decision that would allow the trial court to ignore our prior holdings.[3]

{¶ 41} The Fifth Third entities also contend that the trial court's grant of summary judgment in their favor was proper because "the undisputed facts, which have now been

---

[3] Even if one were to assume, *arguendo*, that *Inks* does control this case, and is an intervening decision; there still exists a genuine issue of material fact as to whether the parties' performance constituted partial performance of the oral agreement, thus removing it from the Statute of Frauds. *See* [Entry Denying Motion for Reconsideration, ¶ 9]; *U.S. Bank Natl. Assn. v. Stewart*, 7th Dist. Columbiana No. 12CO56, 2015-Ohio-5469, ¶ 28 ("To remove an oral contract from the statute of frauds, the party seeking removal must prove partial performance by clear and convincing evidence."); *Third Fed. Savs. & Loan Assn. of Cleveland v. Formanik*, 8th Dist. Cuyahoga Nos. 100562, 100810, 2014-Ohio-3234, ¶ 13 ("As this court has found, even contracts that are required by the statute of frauds to be in writing can be modified orally 'when the parties to the written agreement act upon the terms of the oral agreement.' ").

examined in discovery, demonstrat[e] the failure of Perry's claims and defense." [App. Brief, 10.]

{¶ 42} Specifically, the Fifth Third entities contend that if an agreement does exist, and if the Statute of Frauds does not bar it, it is not enforceable as a matter of law because it lacks essential terms. The Fifth Third entities admit that their first Motion for Summary Judgment was limited to the Statute of Frauds issue and did not raise this particular argument, but contends that upon remand they have now taken "multiple depositions" and "engaged in substantial written discovery" allowing them to further develop the argument.

{¶ 43} "As noted in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 35, '[t]he law-of-the-case doctrine is rooted in principles of res judicata and issue preclusion * * *.' " *Farm Credit Servs. of Mid-Am. PCA v. Pertuset*, 2014-Ohio-1289, 10 N.E.3d 769, ¶ 14 (4th Dist.). "Further, the *Fischer* court noted that prior decisions have held that the law of the case doctrine ' "precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or *available to be pursued*, in a first appeal." ' " (Emphasis sic.) *Id.*, quoting *Fischer* at ¶ 34, in turn *quoting Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404-405, 659 N.E.2d 781 (1996).

{¶ 44} Here, any issue related to the validity and essential terms of the purported contract should have been known by the Fifth Third entities at the time *Perry I* was decided, and were available to be pursued in that appeal. For instance, the Fifth Third entities cite to their own Pay History document to support the proposition that the $5,000 payment received from Perry was applied to payments already owed on the mortgage loan and thus did not constitute new consideration. This document belonged to the Fifth Third entities and should have been apparent

and available to them in *Perry I*. Moreover, any lack of knowledge concerning the essential terms of the purported oral agreement by the Fifth Third entities in *Perry I* was attributable to their admitted failure to conduct discovery prior to the filing of their first Motion for Summary Judgment. Accordingly, I would conclude that because the essential terms argument could have been pursued in *Perry I*, but was not, any argument based thereon in support of the second Motion for Summary Judgment is barred under the law of the case doctrine and doctrine of res judicata.

{¶ 45} In accordance with the foregoing, I would conclude that all of the legal questions raised by the Fifth Third entities in their second Motion for Summary Judgment were or could have been raised in *Perry I*. Moreover, I would conclude that the Ohio Supreme Court's decision in *Inks* is not an "intervening decision" affecting our prior holdings. Therefore, I believe this Court's decision in *Perry I* remains the law of the case; and the trial court erred by granting summary judgment in favor of the Fifth Third entities where genuine issues of material fact remain. I would therefore sustain Perry's assignments of error and reverse the judgment of the trial court.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & *DeGenaro, J.: Concur in Judgment and Opinion.
Hoover, J: Dissents with Dissenting Opinion.

For the Court,

By: _____
      Peter B. Abele, Judge

By: _____
      Marie Hoover, Judge

By: _____
      Mary DeGenaro, Judge*

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

*Judge Mary DeGenaro from the Seventh Appellate District, sitting by assignment of the Supreme Court of Ohio in the Fourth Appellate District.